The next case for today is number 2014-30129, Carlos Poree v. Kandy Collins  If each side could submit a 28-J on this issue if they wish to do so. We'll hear your argument. Good morning, Your Honors. May it please the Court. There are two questions before the Court here. The first is whether the State trial court's ruling is contrary to law clearly established by the Supreme Court. The Petitioner argued that the State court erred in asking whether he posed a potential risk of dangerousness as opposed to a current risk. From the briefing and also from the argument that we have just heard from the Petitioner, I think it's become clear that we're not talking about absolute dichotomies here. The Petitioner has acknowledged in his brief that determining whether someone is dangerous is a matter of making predictions, considering risks. So it appears that we agree that courts are undertaking a forward-looking inquiry here. As the opposing counsel has just explained, the crux of the Petitioner's argument on this issue— I agree, Your Honor. That's what I understand to be the Petitioner's argument, that if you say the standard is potential dangerousness, then you can't draw any meaningful distinctions because anyone and everyone has the potential to be dangerous at some level, with perhaps one or two exceptions. Isn't that a rejection of the statutory scheme of Louisiana that transferred him to the Harmony House? It may be a State law violation. The State law requires us to ask this basic question, and all the evidence before him was that he's okay, right? The judge basically said, you know, and I said he's right or wrong, and he looked back at these terrible things that he had done and just unwilling to take that risk. Well, Your Honor, I think the answer to that is that, as I just mentioned, I think there appears to be some consensus that this is a forward-looking inquiry. So there does have to be some consideration of what are these new circumstances that the — Okay. Of course it's a forward-looking inquiry, but that doesn't answer the problem of potentiality. The meaninglessness of the word is empty of content in this context. What — Go ahead. The problem for me with your position is it's easy for you to say, well, they've just said the standard is meaningless, we'd all be dangerous. But the bottom line is Louisiana could only keep him committed if it adhered to its own law. And they're saying we accept that law, right? So the way this works under Louisiana law, and it's the only way to assess this for me, is to look at the district — the State court's conclusion. She held the court finds that potential danger to self and others has been proved by clear and convincing evidence by both the testimony and this Court's legal opinion. Was there any testimony that found that he was clearly and convincingly a potential danger? Well, there certainly was testimony that went to this point. I believe — Okay. Let me start it differently, then. Did the State court — did — the DA has to get notice, and then the DA has to request confinement, correct? Under 657, you have to say we'd like to keep the person confined. I believe that's how it was. Yes.  Okay. So then you get to the hearing, and you have a burden to show by clear and convincing evidence a person's a substantial risk of danger in the near future. That's your burden. So my question to you is, what evidence did you put on to show substantial danger in the near future? Your Honor, we did cross-examine the witnesses. So it was just cross-examination? I believe that's correct, Your Honor. So you put on no evidence. Okay. But what's the answer to cross-examination that went to substantial risk of danger in the near future? Just quote me what any witness said in response to cross-examination that would go to the Louisiana standard. Well, I don't have word-for-word quotations in front of me, but I do recall Judge Elrod, I believe, had asked earlier if there had been any testimony at this hearing in 2011 about inappropriate smiling. And there were at least two instances of that, two instances where witnesses did testify, at least to the potential of inappropriate smiling. So what we've got, if we just apply Louisiana law, that no one disagrees, is consistent with Foucault and Jones, is the State saying that on cross-examination they elicited that this man had inappropriate smiling. Do you have anything more than that? Well, I think that that is a starting point. I'm asking you for your best piece of evidence that was elicited to adhere with Louisiana law that you, I think, agree Judge Burris must implicitly have applied, right? He had to apply 657. The judge was required. Okay. So he had to find substantial risk of danger in the near future. And I'm just asking you where is the evidence anywhere in the record, cross-examination, of near future risk of danger? What's your best piece of evidence? Does it exist? Well, I think that it is a matter of looking at considering risks, considering the flip side of what allowed. Okay. I'm just asking you for a quote from the record. Do you have one other than that the man smiled? Yes or no? Right now, ready to give to me? Probably to me, the best evidence would be testimony from Dr. Thompson about the Petitioner smiling while discussing his offense.  Okay. So then, if instead of the events of the cross-examination, shooting? Yes, Your Honor. So if that's what you're primarily pointing us to as to consistency with 657, then the district judge, however, in the ruling, three times says, the test I'm applying is one of potential dangerousness. So here's my legal question for you. Are you familiar with the Supreme Court's ruling this year in Johnson, in our en banc ruling in Gonzales-Longoria, where we addressed the ACCA residual clause, and the Supreme Court said using potential risk is indeterminate. We don't know what the word potential means. But our court in en banc said risk, substantial risk of force, isn't indeterminate. So it seems to me that the word potential the Supreme Court has focused on as something that has no meaning, which is precisely their argument. Your Honor, to begin by just addressing your question, I'm afraid that I'm not familiar with that particular case, but I think that our response would be that you have to look at, even when you're talking about the same word, when it's being applied in different contexts, you have to consider the different contexts. And one of the things that's really significant, in my view, about the Supreme Court presence in this area is that it doesn't, in providing the standard mental illness and dangerousness, for the second prong, dangerousness, it doesn't provide a – it's not using a term of art. It doesn't provide as detailed explanation of here is exactly what we mean. It simply uses an everyday term. And I think that the implicit obvious implication of that is that it should be read in an everyday sense. And so the criminal rules of the case law allow pretrial detainees to be detained 3142 and that whole body of law based on a finding of potential dangerousness? Yeah, that's what I'm asking. Can you – person gets charged, get arrested, come in, determine an attorney. Can – I'm just asking you this whether you know, because I don't know the answer. Can a magistrate say I'm going to detain you because I find that you, by clear and convincing evidence, are potentially dangerous? Your Honor, I'm not entirely sure that I can answer that question with certainty, but I think that in that situation and in this situation, the question is, to me, the petitioner is drawing a distinction that is really not based on anything that the Supreme Court has said and is really at odds with the everyday understanding of what we would mean when we say something is a potential danger, a potential risk, potential threat. The real problem here is that it's a question of no evidence. With a bail situation, you find that potentially dangerous because of flight, because of what he's done. But the question here is that there does not seem to be any evidence to support the finding. But it goes – I go back to my question as to what does that do in terms of our jurisdiction, which is to review the state court with a lot of deference, et cetera, et cetera, for their rulings on federal law. We can argue that perhaps that this rather patent argument would be a patent error in applying state law to deny some due process. I haven't heard that argument. You see where I am? I'm trying to understand exactly where we are.  Is there evidence to support that determination? My answer to that is apparently not, and I don't see much meaning in the standard that was asked because he seems to be footing that on he's potentially dangerous. Not from anything I've heard here. Despite what all you guys say, based on what I know he's done, I'm just not willing to accept that. Now, that may be right. It may be wrong. But that arises in a state form under a regime the state of Louisiana has set up for the maintenance of these employees. And the question there is purely one of are we moving him to this lockup facility, which may be transitory to ultimate release, but it is telling that he's being confined. So how do we deal with that? Do you have an answer to that? Just with the evidentiary issue or the continued confinement? What's our jurisdiction? Well, this is just a ruling regarding the continued confinement that is an outcome of the state court judge's ruling that Mr. Poirier is going to remain confined. If he had gone the other way, then he wouldn't have been released either. Certainly not in the immediate future. I believe that's correct, Your Honor. What's the constitutional argument that he's entitled to that? I'm not sure that there is one, Your Honor. And I think that that goes to the larger issue of the petitioner trying to draw distinctions that aren't really supported by relevant Supreme Court precedent, whether a detainee has a right to different levels of confinement rather than just ---- It makes a lot of sense if the issue at the time was to release the man or not or to release him to a facility or to release him with some restrictions that do not confine him. But if you continue to lock a person up, then perhaps that's a constitutional right of some sort. I'm not sure. My problem with this case, which you just heard, is that the state court, in my mind, refused to apply clear and controlling state law, and the DA made no effort to meet its burden. And therefore, we've been presented with a case that's purely hypothetical, saying, well, are we going to articulate a rule that the Supreme Court has said potential dangerousness with residual concerns about the original crime is contrary to Supreme Court law? To me, if we say that, that's a de facto life imprisonment. I don't see when you wouldn't have a person that has an incurable mental illness that wouldn't be potentially dangerous of sort of reverting to whatever the person did 30 years ago. So it's very frustrating that no one seems to be defending what the law required in Louisiana that would not present a Fuca-Jones problem. He didn't make those rulings. I think the law in Louisiana is, jurors had to make all these findings of fact and law in writing, and he didn't even do that. Is that correct? Am I right about that? At 657, you've got to make your findings of fact and law in writing? I don't — honestly, I don't recall whether it specifically requires it. But at the same time, you've got a compelling point that especially — you heard my concern on the other side, which is the Supreme Court itself used that phrase, potential dangerousness. So are we willing to say it's contrary to existing law? Well, I think — I think that's significant that the Supreme Court itself used that term in Jones, where it said the purpose of commitment is to treat the mental illness and protect the detainee and society from his potential dangerousness. Clearly, in that context, the Supreme Court did not understand the first word in that phrase. But at the same time, the Supreme Court and our Court have said that an acquittee has to be released, quote, when he has recovered his sanity. Everyone agrees with that. Or is no longer dangerous, present tense, is. But again, I think that this is — there are cases, if you look at a case like Murdoch, which we cite in our brief from the Ninth Circuit, everyone seems to have agreed that, okay, this man is in custody, he seems to be stabilized, he seems to be all right. But the Ninth Circuit looked at the possibility, and it seemed to be a significant possibility that once he was released from this very controlled, structured environment, that he would simply return to the same position mentally that he'd been in before. It is — do you see the irony? Twenty years ago, the Federal court said you can't incarcerate this man for life because he's insane. But the position you're asking us to rule is that he will be incarcerated for life because his original crime, coupled with I don't know what, makes him potentially dangerous, coupled to the fact he smiled. And yet the same doctor who described the smile said he's not a danger. So it is — it means the man gets the very life sentence that 20 years ago Judge Mintz said he can't have. Well, I think there are a number of differences, just practical differences. But more generally, I don't know if Mr. Poirier — Well, if you're found guilty by reason of insanity, you may very well be locked up for the rest of your life. Well, that is a possible outcome, depending — That's what we have here. This man was a terrible thing, and he was insane, and that's what we're doing in the state response to this class of persons who have committed a violent crime, but then it's determined incompetent, and we incarcerate them. That's not seen as punitive, but it's for the crime itself. It's a very distinct obligation to protect that individual, this society, from a person that is so insane that you can't punish him. Now, the question is simply that it's got to end when you — when the man, if he dies, regains his sanity sufficiently to have done that. So all that, to me, would go straight down the way. And I think had the issue been before where this man is entitled to be released and that you asked the same question, that would be a very different problem. I guess it isn't binary, right? Sorry, go ahead. No, go ahead. You should go ahead and answer Judge Higginson's question. It isn't binary, right? Well, the way I understand Louisiana's structure for civil commitment, it's not just either commitment or discharge. The commentary to the rules all say what we really favor for — and I think the phrase they use is presently non-dangerous. Presently. Louisiana says that. They get put into Harmony Houses. The whole point is put them in highly restrictive environments. So, again, I'm back to Louisiana got it right. They got it constitutional. They got it right. It's just the DA made no effort. As far as we know, I don't think in the record, they didn't even seek confinement. Law requires them to. No evidence. Cross-examination elicits a smile. And now we're here saying that's clear and convincing. So we're in a fictive world. Can I ask a question to follow up with that? Are we here to adjudicate whether or not Louisiana law was followed? Do we have any jurisdiction to do that? Your Honor, I believe that you have no mandate to review whether or not Louisiana law was correctly applied here. Do we have any mandate to adjudicate whether or not continued mental health lockup for many, many years or even for life is a good thing or a bad thing? Sure. I mean, do we really have a – we don't have any adjudication to – we don't have any authority to adjudicate that either, do we? It's not clear to me that you do from the relevant Supreme Court president. Right. So the thing we have that we're here today about is whether or not saying the word potential when talking about once the person is released for dangerousness is contrary to clearly established Supreme Court law. Is that correct? That's the first issue. Is that right? That's correct, Your Honor. And so – and your position is that it's not because the Supreme Court uses that language itself and has not otherwise told us that it's not contrary. Is that your position? Yes, Your Honor. The second question I have is do you concede that the other issue about unreasonable determination of the facts in light of the evidence presented is preserved and that that is actually before us? And if so, how do you respond to that? My recollection of the COA is that the second issue that the COA was granted on was whether there had been an unreasonable application of the relevant Supreme Court law. And so I think that that is a question of – Why is it framed that way? There's no other way to get jurisdiction. I don't think that the issue was framed specifically that way. Do we get to look at the facts? In terms of looking at whether there was an unreasonable application, I think that that can be something that involves examination of the facts. We get to look at the facts. How can you win? Well, I think that there's, one, there's been – the petitioners have talked about generalizing, making generalizations about mental illness and mentally ill. There have been some concerns that have been voiced today about what are we – it was committed by reason of insanity. But as the trial court said in issuing her ruling, this is not a normal case. Mr. Poirier is not a normal schizophrenic. There is – it is, as we pointed out in our brief, and was not – the Petitioner has not attempted to refute, this is extraordinary for any mentally ill person, schizophrenic or otherwise, to go out and wreak this level of violence. Does the record reflect whether his ex-wife is still alive? Because that triggered his outburst, right, at the original crime, the jealousy for the ex-wife? That appears to be correct. Does the record reflect anything about whether any of his victims are still alive? I don't recall seeing any indication of that, Your Honor. But I am out of time. Blessedly. Thank you. Thank you. We have your argument. Do you have a rebuttal? Just a couple of points of clarification. I did misspeak, Judge Hinson, when I said that the trial court has distression about whether or not to hold a hearing. In fact, she does not. Once the panel, the reviewing panel makes a recommendation for release and conditional release. Doesn't the DA have to seek confinement, though? Isn't it start with it? It is the burden. It is the burden. It is on the State to prove by clear and convincing. No, but don't they even have to seek? Initially, yes. Did they in this case? Yes, Your Honor. Back originally, of course, Mr. Poirot was convicted. Yeah. And then only 20 years later on habeas relief was an honor. To me, the toughest question is Judge Elrod's clarification right at the end, which is if you reduce this case to, is it contrary to clearly established law, and yet Supreme Court in Jones used the same phrase. We're saying that's a problem. Your Honor, petitioner disagrees. I know. And because, again, Jones is very clear that continued confinement is only justified with continued mental illness and continued dangerousness. Well, they don't use the word continued, right? They do, Your Honor, say continued. In Fuqua, the court says concurrent and then both, and then the question is? Well, I believe there's a quote in Jones that says continued mental illness and dangerousness. Okay. Yeah. But our argument is independent of whether that continued quantifies both mental and dangerousness. Is Judge Elrod right that your argument cannot take any solace or structure from the fact that it looks to me like everything about what should have happened wasn't done? Is there any relevance to 657 that bleeds into how we look at this case? Well, I think what this Court is mandated to do is to look at whether or not the constitutional right, and I think clearly whether or not it was a clear You haven't alleged, and we don't have a COA on whether there was a due process violation because it didn't follow its own law. That's not before us. Correct? Correct. But still, the constitutional issue is before this Court. I agree. And the COA, just checking, does focus on also whether or not there was a reasonable determination of fact. The other thing I wanted to clarify, because there was some mention about whether or not the issue about Mr. Poray's smiling, and the smiling issue had been testified at the previous hearing, the one in 2009. It came up again because either the Court or someone had inquired of Dr. Thompson, and his response was that he asked Mr. Poray about why he had smiled inappropriately at some point. And he says, well, because it's been, and this is at page 125 of the record, it's been 30 years, and, you know, knowing how I am now, it's hard to believe that I was the kind of person that could do something like that. And his discomfort at that, again, Dr. Thompson refers to that. The point being that, and what the magistrate judge recognized after review of the free has been asymptomatic and in remission for years. Could the judge disbelieve that? Could the judge disbelieve the answer that Dr. Thompson gave, given the judge's knowledge of the prior hearing? I mean, the judge has a cumulative knowledge of the incident, I mean, of everything. There have been repeated review hearings in which the doctors have come in, and both as fact witnesses as well as expert witnesses, testified that Mr. Poray is not a danger. And the court has routinely rejected those time and time again. In this instance, if she did disbelieve the judges, I mean, sorry, the medical experts and the medical fact witnesses, she did so without saying or making any reference. In fact, in her rulings, her references only reference the underlying events of nearly 40 years ago, and the fact that Mr. Poray suffers from an incurable mental illness. Could there be some incident that was so horrible in society that that incident itself would affect your potential or current dangerousness on its own? Your Honor, again. Depends on whether you're before an elected official. Well, I take umbrage with the idea that elected officials can't follow the law. You can, but the fact of the matter is that the DA wouldn't touch this thing and the state judge wouldn't either. I mean, the state ruling on this, I'm sure it was in good faith, but the risk of it goes the other way. The risk of the wrong decision here weighs heavily on everybody, and they want to do the right thing, and no question about that. And it's very, very difficult to answer. We see these terrible crimes being committed by people, and so I don't think it's a matter of people willfully not following the law. I just think it's a risk that's involved. It's a huge risk. And everybody says he's okay, but what if he's not? What if he goes out there? Then I'm the guy that ordered it. It's not that I would be re-elected, but that's on my conscience. So it's a tough call for everybody. But I'm going to be more careful on the bench from smiling. Can you answer my question, please? I apologize, Judge. Is there an incident? Could a judge be following the law and deciding the case on the facts and say this incident is just too heinous, and so therefore the potential or the current, it's kind of an angel dancing on the head of a pin, whether current is really potential because this incident's gone as soon as we snap our fingers. Because of the incident, and the incident itself creates a severe enough risk, is that ever constitutional in what case supports that? Your Honor, I would say that it is not as a matter of, it may be practically true, but it is not legally true. And, in fact, in Jones the court says whether it takes, whether the person is entitled to relief in a week after an offense or never entitled is not, is something, when Jones was looking at the issue about whether or not the confinement could last longer than the sentence, it was making clear that there is no predictive amount of time by which a court would, which an acquittee would no longer be mentally ill or no longer be dangerous. So you can't use the incident itself couldn't be so heinous? Like if the person had, was a nuclear scientist, and so they have the potential to do some sort of nuclear attack, and they had fantasies about it 20 years ago and tried to institute such an attack, the fact that they've been not being healthy in confinement, would that, could you say, oh, the risk is too high of future dangerousness or current, they still have the potential to effectuate a nuclear attack, and we don't know from one day to the next whether the medicine will be effective or, you know, we can't ever know for sure. I think, Your Honor, as a matter of law, no. I think as a, it would go to the weight and bearing and the relationship between the events and the distance of time, and it is a fact-based analysis. I don't think that you can simply, there's no legal, sound legal doctrine that's set by the United States Supreme Court that would allow that sort of de facto rule. Okay. Thank you. Thank you. The court will stand in recess until 9 o'clock tomorrow morning. Thank you.